SINCLAIR *against* WILSON.

An administrator who suffers a judgment to be rendered against him, in an action wherein the declaration does not charge him with having received estate sufficient to pay the debt sued for, does not thereby make such an admission of assets as will charge him personally.

Hence, a judgment obtained by an award of arbitrators, against an administrator in an action where no declaration was filed, was *held* not to be conclusive upon the administrator personally.

ERROR to the Common Pleas of *Westmoreland* county. .

This was a case stated for the opinion of the court, the facts of which are fully set forth in the opinion of his Honor who delivered that of the court.

HUSTON, J.---*Robert Baldridge* died in 1815, and on 21st August of that year, letters of administration issued to his widow *Jane Baldridge* and *David Wilson*. *Thomas* and *William Baldwin* were the sureties of the administrators in their administration bond. Suit had been brought on that bond and a judgment rendered for the penalty. A *scire facias* issued thereon against the defendants, alleging a *devastavit*, and a case was stated for the opinion of the court as follows.

After stating the death of *Baldridge*, and the administration on his estate, and the bond and suit on it, as above, the case proceeds:. To February term, 1828, No. 121, suit was brought by *A. Sinclair* against the administrators, in *Westmoreland* county, and the process was served on *D. Wilson;* and a rule of reference was entered by the plaintiff and arbitrators appointed, who, on the 1st June, 1818, reported in favor of plaintiff for one hundred and thirty-seven dollars. There was no appeal, and the report became a final judgment. At that time the plaintiff might refer before he filed a *narr.* and he did so in this case; and the award and judgment was obtained before the defendant plead or could plead to the action. An execution issued for the hundred and thirty-seven

(Sinclair *v:* Wilson.)

dollars to Nov. 1818, and a return of *nulla bona* was made upon
it. To February term, 1819 suit was brought on the administra-
tion bond, and the writ served on the three defendants in this
suit, but not on *Jane Baldridge:* a plea was put in, and in 1825
a judgment was rendered for the penalty. This judgment being
only cautionary, this *scire facias* was sued out; in which the plain-
tiff claims his whole one hundred and thirty-seven dollars, judg-
ment and costs. The following facts are also found, if they
could be legally given in evidence under a special plea. On the
5th of September, 1815, an inventory and appraisement of the per-
sonal estate of said *Robert Baldridge* deceased, was duly made,
and it was filed in the Register's office on the 23d of September,
1815. A statement on oath of the debts of the deceased was filed
the 2d December, 1815: some of these are hereafter mentioned.
On the 16th of February, 1817, *John Hume* obtained a judgment
before a justice against the administrator for thirty-six dollars thir-
ty-five cents, a transcript of which was, in 1819, filed in the Protho-
notary's office. And further, that in the Common Pleas of *West-
moreland* county *Alexander M'Clurg*, at November term, 1814,
obtained a judgment against *Baldridge* in his life-time, and
*David Wilson*, for the proper debt of *Baldridge* for four hun-
dred and ten dollars, upon which several executions issued; first,
in the lifetime of *Baldridge*, and since against *D. Wilson*, the
survivor, and the debt is not yet paid. This judgment would have
absorbed the whole personal estate. On 24th February, 1819, the
administrators presented their account to the register, where it was
passed, and was duly confirmed by the Orphans' Court on the 24th
May, 1819. This account shewed the application of the whole
personal estate.

On the 9th October, 1813, *R. Baldridge* and *Thomas Bald-
win*, one of the defendants, settled their accounts, and the deceas-
ed was indebted upwards of $500, no part of which has been or
can be paid. The court gave judgment for the defendants.

Those decisions of the courts of common law, by which an admin-
istrator who neglects to plead fully administered, or want of assets,
is held to admit assets, are among the most harsh and unreasona-
ble. It was introduced at a time when many supposed the world
ought to be governed by logic; and that an abstract syllogism was
the only true test of the truth and justice of any thing. The decla-
ration, then always, after stating the demand against the deceased,
averred that assets sufficient to pay came to the hands of the ad-
ministrator. The administrator often denied the claim of the
plaintiff, and he omitted to reply to the averment, that assets came
to his hands; to say that, therefore, they did come, or that it was
admitted they came to his hands, was a *non sequiter.* At best it
only proved, that his attorney was a careless pleader. But it was

(Sinclair *v.* Wilson.)

so settled; and whether the law is so in this state; or whether our acts of assembly, or our practice has changed it, I shall not inquire at present; I will only say, that if our statements do not aver that assetts came to the hands of an administrator, it is not easy to say, why in his pleading he should deny what is not alleged, or how an issue could be taken on such plea without a departure. The law continues as above stated in one end of *Westminster Hall,* but it has ceased to work injustice; for if the administrator has not sufficient assetts to pay, he has only to procure some friendly creditor to file a bill in chancery, on which he submits to account; the chancellor then takes cognizance of the whole estate, and the judgment at law is arrested, and considered as settling the amount due the plaintiff, to which the chancellor decrees so much as by an apportionment of the assets falls to his share. Why we, who profess to follow equity, have not in some way attained the same thing in our courts, I do not know. And it is more strange, as by express act of assembly, in all cases before a justice of the peace, the amount due the plaintiff is first ascertained by a judgment, and after that is decided, provision is made to ascertain what portion of such demand can be paid from the assets. It has been said, that a judgment of a justice is no proof of assets, because their being no pleadings before a justice, the administrator is not concluded, by omitting to allege want of assetts there; in other words, that he is not concluded, because he omitted to do what was impossible.—Be it so: the plaintiff in this case might have filed a declaration or a statement, and called for a plea:—he, has not done so, but he has done more; by omitting to declare or file a statement, he had rendered it impossible that the defendant should plead; he has got a judgment without stating his claim, and of course in such a way that the defendant could not state any defence of any kind. Unless therefore we are prepared to decide, that the act of administering is an admission of assets, and renders the administrator liable for all claims at once; there is no ground to charge these defendants. As soon as the plaintiff put his claim in such a state as that it was possible for the defendant to allege the want of assetts, he did so, and proved his allegation to be true.

Judgment affirmed.